May it please the Court, I am Theodore J. Boutrous, Jr., representing Wal-Mart. I'd like to reserve five minutes for rebuttal. The class certification order in this case is literally unprecedented, not simply because of the size, but because of the number of legal doctrines the district court had to nullify in order to certify it. I'd like to focus on three of those today. I missed that last sentence. I said it's unprecedented in the sense that the district court had to nullify several important legal doctrines in order to certify the class. And I'd like to focus on three of those today, Your Honor. First are the most basic requirements of Rule 23, commonality and typicality. Simply put, the named plaintiffs' claims simply are not common or typical of the experiences of millions of women around the United States who worked at Wal-Mart. This is the first class action decision in history to certify a multi-facility, excessive discretion class action where there is substantial evidence that at multiple facilities around the country, there was no discrimination. Second. What is that substantial evidence that you refer to? Wal-Mart submitted statistics at a store-by-store level that showed that at over 90 percent of the stores, there was no statistically significant disparity in terms of pay to men and women. At some of the stores, women were paid more than men. And at some of the stores, men were paid more than women. And our contention, Your Honor, is that given that, given that discretion is the key element that is being challenged here, that the plaintiffs had the burden to show that there was commonality at the individual units and at the decision-making level where the decisions that are allegedly discriminatory were being made, and they failed to do that. It was their burden, and they failed to make that showing. What did the plaintiff's expert have to say on that subject? The plaintiff's expert, Judge Pragerson, did not put on a store-by-store analysis. He instead put on an aggregate analysis which gathered all the statistics nationwide, put them together, and then he ran regressions on the aggregate numbers. That masks what is happening at the store level. I had thought that statistical analysis was done at a regional level. Am I wrong? I believe, Your Honor, that the pay analysis was done at a national level, and it's a bit, I think, misleading in the way it's referred to in the record. But my understanding is that Dr. Drogen ran a national regression, and he came up with a predicted value in terms of what the hourly pay, according to him, should be absent discrimination, then compared that with the averages that he came up with at the regional level, and that was his analysis. He never conducted an analysis comparing the pay of men and women in the individual regions. Instead, he compared the regions to the national average, which does not tell us anything about whether there was discrimination going on and the discretionary decisions being made. I'm confused about something there. Educate me. Regression analysis means you figure out what statistically significant indications there are of correlations between particular variables where a number of variables have been grouped together, as I recall. Yes. Now, statistical significance means there's less than one chance out of 20 that the results would have occurred by chance. Am I right so far? That sounds right to me, Your Honor. Your expert showed that there is, in over 90 percent of the stores, there is no statistically significant disparity. That is, no disparity beyond what you would expect just by chance flips of the coin between the sexes at the stores. That suggests to me that if you look at the stores as a large group, you just don't find evidence of sex discrimination. Your challenge to your adversary's expert is that he didn't do things store by store. He aggregated. And I am confused about why the aggregate analysis does not come out the same as no statistically significant disparity. There are a couple of reasons, Your Honor, and our expert talked about these first. Something called the law of large numbers, which when you have such a large data set, statistical significance can be achieved much more easily because of the large data set. Sure. Flip a coin twice and you get two heads, it means nothing. Flip a coin 100 times and get 98 heads, it does mean something. Exactly, Your Honor. And our expert also showed how misleading it can be to combine the stores. On pages 567 and 568 of the excerpts of our excerpts of record, in pages 610 through 613, she showed how if you combined one store where men were paid more than women, and then you combine with another store where women were paid more than men, in some instances it would show that grouped together, women made more. And then if you looked at another couple of stores, it would show that men made more. So the problem is that the statistics mask, the aggregation masks what's really going on at the store. That's what confuses me. Yes. It seems like when you aggregated, you'd come to the same result that your expert did. If you have one store where you've got a manager that discriminates in favor of women and you've got overwhelmingly men as managers, the sex discrimination would be masked by grouping the two stores together. But why wouldn't the result be the same as no statistically significant disparity in over 90 percent of the stores? I think one of the other features, Your Honor, would be what the results of the Chow test would reveal. Again, to get into the statistics, the Chow test is this fundamental test that statisticians conduct to determine whether data sets can be aggregated together. Our expert did that test on the plaintiff's aggregated statistics and found that the aggregation failed that test. I want to be clear about one thing about your argument. I think you've steered clear, but you're not relying upon the stricken portion of the Hayworth conclusions, are you? We are not, Your Honor. None of your argument is referred to that. None of them refer to that or rely on it. We did inadvertently cite a couple of pages, but that is not fundamental. And just to clarify, too, on page 1238 of the excerpts of record, the judge explicitly says, contrary to some of the suggestions from the plaintiffs, that the conclusions in the analysis of Dr. Howarth were not stricken and remain in the record. And so on the commonality question, we believe the plaintiffs had the burden. Whatever our statistics show, the plaintiffs had the burden, as the Stasny case from the Fourth Circuit made clear, the Cooper case recently from the Eleventh Circuit, of showing that this discretion was being exercised in a common, commonly discriminatory way in each of the units where it was being exercised, i.e., the stores. Can we tell from this record what percentage Walmart-wide of hourly employees are women? Pardon me, Your Honor. Can we tell from this record Walmart-wide what percentage of hourly employees are women? I believe so, Your Honor. Isn't it about 65 percent? I believe that's correct. And the flip side is the percentage of salaried employees, which would be assistant managers, department managers, store managers, regional managers, that percentage is about 33 percent? I believe that's what plaintiff's expert has stated. One-third of hourly employees are women. One-third of salaried employees in management positions are women. That's when you look at the nationwide statistics, Your Honor, and when you put it all together. But as we pointed out, that does not tell you what's going on at the store level or really even at the regional level. These decisions are being made even at the promotion point by thousands of store managers when we're talking about the support manager position. Can we tell, by the way you raised that interesting subject, can we tell are there records which would show the basis for those individual decisions? In other words, when a manager says, I'm going to promote John instead of Jane, is there a record that says why that was done? Your Honor, I don't think there's a – in the PeopleSoft data or any of the written records, written documentation explaining each decision. That's one of the reasons, which brings me to my second point. Does Wal-Mart require that kind of information? It did. At the time of this – these events, it did not require those sorts of documentation. One of the reasons the plaintiffs attacked the process is that there was discretion given to managers and that the central – that the home office did not closely monitor the promotion decisions. But that's one of the reasons we believe there's no showing of commonality. The district courts seem to rely quite heavily upon those two points. That is, that these decisions are largely discretionary and that there's very little if any record information that would explain or justify the decisions that were actually made. What was wrong with that? Well, what was wrong with that, Your Honor, is that in terms of showing commonality, it destroys commonality. Those two features make it impossible to say that on a system-wide basis all of the And the district judge stripped Wal-Mart of its right in Phase 2 to bring forth the managers to explain their decision. And so – Let me ask you about a couple of things in the record that I found interesting or maybe even a little curious. One is that Wal-Mart, in terms of store managers, favors individuals who are willing to relocate. Is that correct? That was one of the plaintiff's contentions, and relocation was one of the factors included in some of the decisions, yes. And, in fact, Wal-Mart feels that it benefits from that policy because they get consistent management style throughout the stores, right? That's correct, Your Honor. But not – but there was no evidence that those managers were – and the people who were relocated were making common or even at all discriminatory decisions that would show commonality. Wal-Mart also has this practice – correct me if I'm wrong about this – that in order to apply for certain management positions, you must – to even apply for the position, you must have the approval of your supervisor? The – for certain level positions, the – Or higher level positions. The higher level positions that you would have to get approval. That's correct, Your Honor. In fact, they're the only positions that are advertised, right? A lot of these management positions are not advertised at all, are they? Well, the – that's, again, one of the plaintiff's claims was the lack of posting of the positions. But to go back to one of your other points, Judge Hawkins, the posting data, once the posting data was in 2003, the company posted for positions, thousands and thousands of positions. The return rate, the applicant data that came in in response to the posting mirrored almost precisely the number of women who had been getting those positions, which really refutes the argument that the lack of posting or that the lack of posting earlier was somehow not reflecting the number of women who were interested in the process. Are you saying that when they did post that it was a fairly random occurrence, it wasn't something special that would attract or not attract women, and the percentage of women who expressed interest in getting this sort of management position was the same within statistical significance boundaries as the percentage of women who, in fact, have management positions? Yeah. And who had been getting that type of management position earlier before the positions were posted. So it really showed that there was a difference in preference and difference in interest in men and women. Aren't you really talking now about the merits of this matter? That's what you're talking about, and we're here to determine whether the trial judge abused his discretion. He had evidence on both sides of these issues. I read his opinion. It's very thorough and painstaking in its detail. And, I mean, that's what we're here for, to decide whether he abused his discretion. Well, Your Honor, there are leaks. You've got experts on both sides. And on your particular expert, the judge struck, did he not, significant portions of his testimony? First, that's the last portion, Your Honor. No. It was a very minor part of her testimony. The conclusions and analysis remain valid. Plaintiff's expert did not rebut those store-by-store statistics. So that's simply incorrect. And as I said, page 1238 of the excerpts of record makes that clear. As to store-by-store statistics were gathered by your expert asking managers? No. No, Your Honor. That was the store-by-store survey that was stricken. That was the part that was stricken? Exactly. So she went to managers and said, are you even handed in your promotion? And that is gone. But she had other reasons. Deposition testimony. The plaintiff's own expert, Dr. Bilby, testified that these were highly discretionary decisions made at the store level. And so there's no question there's a predicate for that information. And just to be clear, that store-by-store analysis is on page 579 through 584 of the excerpts of record. And it remains there. What's the number again? 579 through 584. Thank you. And to go back to Judge Pragerson's point, Your Honor, the merits do overlap somewhat with the commonality question when you have a claim like this. But the Falcon case, the Supreme Court's decision in Coopers and Librand made clear that it's crucial to scrutinize both parties' evidence to determine whether there's commonality. And here, as the case after case is held where you have multiple facilities, court of law. Well, our job is not to weigh the evidence. We're not asking you to, Your Honor. In fact, there's no weighing that has to go on. Plaintiffs did not submit any store-by-store statistics. It was their burden. Let me – we're running out of time. Yes. And I have a couple of questions on my list I haven't had an opportunity to put to you yet. If I understand correctly, the real core of the plaintiff's challenge, it is that there is a national policy at Walmart of not having national criteria for promotion. And even though store managers have discretion, it is a national policy to give them that discretion. That national policy lends itself to sex discrimination, although they have not proved sex discrimination. Why isn't that subject to a class action challenge? Why isn't there enough commonality and typicality to a challenge to a national policy of not having a national policy? Because, Your Honor, the policy itself is one of allowing different people, thousands and thousands and thousands of people, to do things differently in their own discretion. You're saying you shouldn't be allowed to do that. It should be like the post office. You should have nationwide criteria. And anyone with a master's degree gets ahead of anyone who just has a bachelor's. Anyone with a bachelor's gets ahead of anyone who didn't get a bachelor's. And so forth. And the Supreme Court of the United States, in the Watson case, squarely rejected that position. The Court said in Watson that discretionary decision-making, subjective decision- making, is not per se wrong, and it can be very helpful and useful to our economy and to businesses. And so it's not, it's an impermissible argument to just challenge the giving of discretion. And I should add that the plaintiff's formula here is threefold. One, it's the discretion. Two, they say there's some central policies, none of which have to do with the employment issues. But three, they have Dr. Bilby, their sociologist. That's who's supposed to pull it all together. Dr. Bilby concedes, as the district judge noted, that he can't tell you how frequently sex stereotyping seeps into the system. What's their evidence in the record comparing the performance of Walmart vis-à-vis on the gender issue with its competitors? Dr. Bendick submitted a benchmarking study. That's correct. But that can't plug the gap, Your Honor. That was a snapshot. It wasn't. And didn't that show that Walmart's record substantially lags its own competitors? Well, we vigorously objected to that study. But the district court considered it. But assuming it's in there, I'm not saying you're not trying these issues. I'm not asking you to, Judge Ferguson. But it doesn't solve the problem. It doesn't show that these decisions were being made in a common way across the board at these stores or in promotions. Let me ask you this question. You know, I went through your briefs, and I don't know whether you wrote them or not, but, you know, the briefs, the blue brief, I have it here. You know, it has language in there that's a little arrogant, that's a little offensive towards the district judge, talking about the judge being prolix and wordy and long-winded and trampling on Walmart's due process rights, ignoring unrebutted evidence, twisting substantive justice, making unfounded assumptions, and working gross and manifest injustice. And do you regard this as an effective way to present written advocacy? Well, Your Honor, that was our hope. And I hope we can persuade you. Your hope what? I hope that we would persuade you that this is a ---- You slam the district judge? I didn't mean any disrespect to the district judge, Your Honor. Well, what do these words mean? We believe that the district judge violated the due process rights of Walmart, and that ---- Well, you can be courteous when you say those things. No disrespect meant, Your Honor. This was almost like someone was fighting in the streets in Alley. No disrespect meant, Your Honor. What? No disrespect to Judge Jenkins meant at all. Maybe you ought to apologize to him sometime. I was a district judge for 12 years, and if I read all this, I wouldn't like it. And I'm just surprised that you have these major law firms here that you haven't learned that lesson. But maybe that's the way you do things. Your Honor, I ---- Counsel, one more question I had and ---- Well, you want to answer my question? Oh, sorry. Your Honor, as I said, we meant no disrespect to the judge. We feel very strongly about these issues, and we think that there's been a due process violation here that is very serious. That the court stripped Walmart of its right to put on evidence to defend itself. And we think that that requires decertification of the class under the Teamsters decision and under the State Farm decision. It looks like I have 12 seconds left for rebuttal. What unrebutted evidence did he ignore? The statistics submitted by Walmart that showed that at 90 percent of the stores, there was no statistically significant disparity. What did their expert have to say about that? He did not respond with statistics that showed on the store-by-store level. The judge, the Dr. Drogon submitted critiques. Do you have another example? That was when we talked about unrebutted statistics, Your Honor. That's what we were talking about. The word unrebutted in this brief, oh, at least two dozen times. Well, those statistics are unrebutted, and ---- Well, so you have one situation. But they're crucial, Your Honor. Well, they may be crucial, but ---- Judge Kleinfeld has a question for you. I do. Rule 23B3D says that one of the things that's supposed to be considered is the difficulties likely to be encountered in the management of a class action. Could you be concrete, make it simple for me, of what difficulties are likely to be encountered in the management of this class action? Absolutely, Your Honor. Let me give you one example. Under the trial plan by the district judge, if the plaintiffs prevailed in Phase 1, in Phase 2, Walmart would be precluded from showing that a woman who was working in a Los Angeles store was making more than her male counterparts, that the store itself was paying women more than men, that the woman had been promoted into management and had never been subject to discrimination. That woman, however, under the trial court's plan, would be able to recover back pay if her pay fell below some national average that the plaintiff's expert predicted should have been achieved. If the usual rules under the Teamster case and Title VII, Title VII, Section 706G2A, precludes people who have not been victims of discrimination from collecting back pay and punitive damages are precluded as well. If those rules were applied, Walmart would be entitled to put on an individual case to rebut the rebuttable presumption of a relief being owed to each individual class member. And that would entitle Walmart to put on a case and put on a defense. The judge found that that was a little beyond management. That goes to due process of law. That's correct. And it also goes to incorrect application of Title VII. Could you focus for a moment on anything in the nature of simply management? Yes. On manageability, again, there are a host of issues. For example, on the punitive damage claim and the back pay claim, the judge did not describe how really how back pay would be calculated, other than to say that this PeopleSoft data would be used, without Walmart being able to respond to it. But he limited the plaintiff's claims for back pay, right? Yes. He limited those. And, you know, this is a he didn't lay out a complete roadmap for you, did he? No. Okay. So when you come to that issue, you have them there and you discuss it with them. You know, I've handled these cases like this. And you get to walk in there and here's the whole plan. You know, you work with a judge and you work on managing it, and a lot of it depends on how smart the lawyers are, too, right? That's true, Your Honor. But the district judge has to make sure now, before this goes too far down the road, that it can be done. The manageability, if this was done properly, would require that Walmart have the right to bring in its store managers from around the country. Your answer is 1.5 million individual suits. No, Your Honor. It's not. As I said, the store-by-store statistics show that at most there is. Your answer is 4,500 individual suits? I don't think it would be that many either, Your Honor. There might be, as we pointed out, class action rules. Imagine if women won six or seven in a row, then Walmart would settle all the others. And if Walmart won six or seven in a row, then it would be hard for plaintiffs to find lawyers. The collective wisdom of juries can guide both sides in making rational decisions once some of the decisions are litigated. But I do want to make clear, in Judge Pragerson, on the class action rules, the Rule 23 may apply to some of the departments or divisions if the plaintiffs could meet the standards. So we're not suggesting that there aren't ways to effectively enforce Title VII. Walmart has strong equal employment policies, and we recognize that these are important policies at work here. The good thing about a class action from the defense point of view is if you prevail, you don't have to worry about the collective wisdom of juries. That's true, Your Honor. That's true. And the Falcon case made the point that oftentimes everyone assumes that the plaintiffs are going to win. If this case goes to trial, 1.6 million women could conceivably lose, and that's a danger as well. And so we think that a fair ---- Another possibility would be you settle, and the lawyers get a fee, the plaintiffs get, I don't know, coupons or promises of reemployment at a higher rate if they wanted or something like that, and then all the women are precluded. That's one of the alternatives is always settlement, Your Honor. But it's better that the fair ---- That will be for Round 2. I think you're over your time. I'm sorry. That will be for the IRS. Okay. I hope I can retain a little time for rebuttal. Thank you. Your Honor. Good afternoon, Your Honors. Brad Seligman for the plaintiffs. The defendant does not challenge a single factual finding in front of this Court. It asserts legal error. And I think we have to be clear basically what they're claiming. As I heard them, they're making three challenges. I don't think we have exactly factual findings, do we? We have discretionary calls. No. We have 83 pages of findings by this Court which are highly specific, finding, for example, that there's a uniform policy throughout the country allowing the same zone of discretion in every region, in every division, in every store. There were trial of fact. I think the judge was just saying that there was no dispute that as a national matter, Walmart does not impose any particular structure for hiring and promotion criteria on individuals. The Court went way beyond that, Your Honor. What the Court found was that there's uniform job categories, job duties, procedures. You say the word found. You're asking me to review for clear error. And it's a very curious thing when there has not been a trial of fact or a hearing of the facts. What are you looking at in the decision? The judge's class certification opinion, Your Honor. It's at 222 F.R.D. 137. I don't have the excerpts of the record site. We'll get it for you in one second. But he made highly specific factual findings throughout. And this Court has held that those findings, even a class cert hearing, are binding unless there's clear error. And the defendant here does not challenge any single finding as having clear error, including, Your Honor, despite the defendant's claim that all stores are autonomous, this Court made a ---- We're seeking clear error review, not abuse of discretion review. Well, the abuse of discretion is only as if there's clear error or legal error. And the defendant is bound by the factual findings below, since it did not show that any of them were erroneous. And I think I need to point out what the Court specifically found. It found that there are ---- The excerpt's right here. What are you pointing to? Yes. I'm looking at the class certification order, which starts with a table of contents, which goes on from pages 10 to 45, has findings, highly specific findings. For example, excerpts of record 1147 to 48 and 1159 found uniform personnel and management structure. Findings of fact there. Well, he didn't use that term, but he made factual findings, Your Honor. I think that's ---- That's a very important term. It is. And I think it's a very important ---- what this Court has found is when a ---- An evidentiary hearing where he said, I now make the following findings of fact? What he had was 2,000 exhibits and 500 declarations, Your Honor. And all the time on motions for summary judgment. And it's impossible to make a finding of fact. All you can find is that some fact is not genuinely in dispute.  There's a lot of mislabeling going on.  Whatever you call it, Your Honor. Let me ---- I don't want to be misled into using the wrong standard of review. Well, I think the standard of review is an abuse of discretion. And what this Court has said is it's an abuse of discretion if either there is clear factual error or as a matter of law he's wrong. And the defendant isn't claiming clear factual error. And as far as the legal matter, the defendant makes three legal assertions. He had an evidentiary hearing and pronounced what he said to be findings of fact. He had a hearing based on an evidentiary record, and he pronounced findings about what ---- So these are different words. A hearing based on an evidentiary record is like an argument between lawyers based on exhibits they've submitted. An evidentiary hearing is where witnesses testify, and they testify contrary to each other quite frequently. And the judge says, I find the following fact, and I want to know what you did. He did not have a live testimony evidentiary hearing, and he didn't use that phrase. What he found was that the plaintiffs had met their burden to establish under Rule 23 both commonality and typicality. Right. And he recognized the standard requires that the plaintiffs, by preponderance of the evidence, show those factors. My colleague's question, I think, is, is that a factual determination or a legal determination? Well, perhaps this is a matter of semantics, but let me look at what the legal argument is. By responding, it's a blank determination. The judge made factual and legal determinations. The factual determinations he made was that there was substantial evidence to show commonality and typicality and adequacy of representation. And he made ---- So when he concludes that the plaintiffs met their burden under Rule 23 as to commonality and typicality, is that, A, a factual determination, B, a legal determination, or C, a mixed factual legal determination? I think it's fairly described as a mixed determination because the standards apply. If it is mixed, what's the standard of review? The standard of review is that the factual findings of that judge are accepted as binding unless there's clear error, and you review to see if the legal application is erroneous or not. And in this case, the defendant has made three legal assignments of error. Each of them is not supported by any law. The first claim they make is as a matter of law that a challenge to a subjective system can never be done on a class basis. And the entire argument the defendant made about the, you know, that if it's subjective or discretionary that you can't assume anything was something the Court carefully considered in a factual record that found that there was a company culture and training and movement of people between stores and a statistical record that showed, in fact, there was a result. The Supreme Court in the Watson case rejected the same argument the defendant made here. The paradox there. Yes. If I recall Watson right, what it said was that discretion may allow for sex discrimination, but discretion isn't per se sex discrimination. Absolutely. It isn't any more than a test is per se discrimination. Now, if I understand your argument correctly, it's essentially, at its core, that Walmart has a national policy of not having a national policy about who gets promoted or on what criteria or who gets raises or on what criteria. It's all up to the discretion of the individual store managers to create their own systems. And your expert says that may lend itself to sex discrimination if they're stereotyping. Have I got it right so far? No, Your Honor. Our argument was that they had a common policy allowing the same level of discretion in every division of the company and with a high degree of centralization, with common training so that the exercise of that discretion in the context of uniformity conditions, common culture, common movement of managers was likely to be uniform throughout the company. It wasn't just anything goes. They were happy with the exercise of that discretion and its results. I'm sorry? They were happy, pleased with the – based on this showing, understand we're not on the merits yet. I understand. According to Judge Jenkins, they had wide discretion in terms of how these decisions could be made. They were happy with the way in which that discretion was exercised and made no effort to determine how the individual decisions were made. In fact, there was no requirement that any records whatsoever be kept on how those individual things were decided. Now, I have trouble getting from there to the sex discrimination without some solid statistical evidence. I'm thinking the hiring decisions that we make for law clerks. We don't advertise them. We get hundreds and hundreds of applications. Every judge has entirely subjective and personal criteria. There is no national order for what our criteria should be. You don't have to pick from the top U.S. news list schools or anything. It's just whatever you want. It may be that judges, like the rest of humans, have various stereotypes. It seems like you would have to prove sex discrimination if it were – if we didn't have all our enjoyable immunities by a particular judge. Well, you know, the difference, Your Honor, is I think I would be the last person to suggest the judges are anything but autonomous. You have your own hiring standard. There is no oversight of what you do. Well, I think it's significant. Walmart does not have 36 separate – 3,600 separate judges. It has a highly uniform system, which the judge found was subject to oversight and constraint. Judges don't move around to different benches either. It would have a lot easier time if you had particular challenges. For example, if Walmart had a national policy of veterans' preferences, it would probably favor men as managers. If it had a national policy of educational qualifications, it would favor women because you can graduate from high school more, matriculate and graduate from college more. But subjective standards can be challenged, as the Supreme Court has said, both in the Watson case and in Falcone, on a national basis as a class action item. There's no difference. A policy is a policy, whether it's a test or a subjective standard and the like. If it has an adverse impact, if it has a common result, it can be challenged under those cases. And I want to go to the statistics because I think there's a lot thrown around about – You've shown any indication that there is some national adverse result for one sex or the other, have you? Yes, we have. What we've shown – and, in fact, I want to turn to the statistical showings. The plaintiffs did multiple regressions which took into account the only objective evidence that was out there in their electronic data, the seniority of employees, the status, the job position they held, the performance appraisal they had, and, indeed, the store they worked in. And Dr. Drogan, plaintiff's expert, based on that analysis, found statistically significant differences in pay in every single one of the years he analyzed. He also found that these differences were statistically significant in every one of the 41 regions of Walmart. He further found that the average differences in pay were different in every single region favoring men. Now, that's what the plaintiff showed. No court is required to accept that carte blanche, but what did the defendants offer? The defendant offered a model in which they did the classic slice and dice. They didn't do a store-level analysis. They divided up every store into seven subunits, and then among those subunits, they added a variable for department. So, essentially, what the defendant's analysis did was compared men and women in the same department, even though the pay policy makes no distinction by department. So, to give you an example, because there's 50 or 60 departments in each store, the jewelry department is 97 percent women. They are the lowest paid women employees at that store. Under the defendant's analysis, those women's wages were not compared to anybody else at the store. That's how they drew their result. Nevertheless, Your Honor, I want to go to your question about your question of how come aggregating wouldn't show no result. The defendant didn't aggregate her results, even with that model. But plaintiff's expert did aggregate the defendant's results, and it showed on a nationwide basis, even with her slice-and-dice approach, a statistically significant difference in pay between men and women. So she didn't aggregate it in this case, but if you look at her own data, it showed that pattern. Now, the defendant says this is all unrebutted. The Court, in fact, compared the two models and asked the question, is this evidence compel me to do to accept only a subunit-by-subunit model? In other words, is a level of aggregation or disaggregation compelled by this evidence? What the Court found — I think the jewelry departments are managed separately, aren't they? Well, that's defendant's assertion. What we pointed out, and which the judge accepted in his opinion, was that the same pay policy applies to all employees, and there's no distinction made. The policy is not to have a policy effect. No. The policy assigns each job to a job classification. It says that if you raise the starting pay above 6 percent above the level assigned to that store, there's an automatic report to the district manager. It's called an exception report. And if it is more than that, it goes up the line. In fact, one of the declarations in this case, Declaration 128 by Sandra Ellison shows that it's embedded in their computer system. Any store manager that gives more than a 6 percent raise gets an automatic notice. And I'd be more concerned in the jewelry department than I would in the dog food department because it involves less heavy lifting. The inventory is lighter. Well, that may or may not be true, Your Honor. How do you know that you don't just have differences? The dog food is where you eat the dog food. How do you know there aren't just differences in what the labor market supplies labor at? What price will pay for this? That's an interesting question. But the defendant offered not a scintilla of evidence other than this management survey that was stricken that showed that, in fact, there was any differences between those departments or that there was common policies, a different policy for each. The record this judge had showed no difference between the departments. And it showed that the defendants basically chopped up the departments to smaller and smaller pieces for statistical analysis. And the defendant justified that by three reasons. It first said, and the first and most compelling reason it justified was based on this survey that was stricken. The second reason it argued was this so-called chow test, a statistical model, which the Court found did not compel a particular level of aggregation, particularly where there were common policies and particularly where there was a lot of movement of management between stores. But more importantly, unrebutted was the point that plaintiff's experts said the chow test at most shows that perhaps one store might be different than the others. It doesn't show that there isn't a common pattern throughout the company. The opponent argues that at the end of the day, if we were to leave what the district court did in place, you have this anomalous possibility that a person in position A, let's call it assistant manager, maybe even store manager in Los Angeles, who happens to earn more than people in her own store or her own region could still get recovery based on an overall national aggregation. That wasn't a model. I stated that particularly well, but you understand the argument. I understand. I heard the defendant's argument that women who were getting paid more than men might get money. That's exactly the model the Court rejected. In fact, it cited the Shipes case, Shipes v. Trinity, the Fifth Circuit opinion. In that case, the defendant argued let's just divide the money up pro rata and give everybody ten cents or a dollar or whatever, and the Court said no, we have sufficient evidence to look based on the statistical data and make an individual by individual determination. There's no reason whatsoever why in a back pay damage provision you couldn't put into your model to ensure that appropriate shouldn't get any money. You can take that into account. I thought Wal-Mart would not be allowed even to take that question to a jury. That's not true whatsoever. Wal-Mart, in fact, can make all the arguments they're making at class search to a jury. They can argue what factors should go into pay, about background, about experience. They can make the argument that there's no common policy that stores a difference. The judge said you'll just get a master's hearing and you won't be allowed to prove that to a jury. The judge did not make that. All the judge said was at the damage phase, there's lots of ways you can calculate damages. The defendant is not precluded at any stage from going forward and making the argument that there are individual differences. They're also not precluded at the remedy phase from arguing that a statistical model should exclude paying back pay to any woman who gets more than the average in her store. There's nothing that precludes that. The judge didn't have to address that problem right now. The problem right now is the only data. I'm sorry. Let me get a question before we run out of time on an entirely different topic. Sure. Sorry, it's bothered me. Representativeness. As I recall, you have six actual clients. That's true. Once it's a class action, then it's kind of lawyers without clients. The lawyers really have to run it. Not the way my phone is ringing, Your Honor. I've got a lot of clients. Well, let's talk about one of these six. One of them, as I recall, is a woman who was fired for falsifying her timesheets. Now, it seems to me that she would have an interest and you would have a duty in the course of your fiduciary duty to represent her, to advance her interest. She has an interest in getting a common remedy applicable to everyone so that she gets back pay for the money she would have made if she'd continued to work for Walmart, even though she wouldn't have because she got fired for lying on her timesheets. But another woman who was honest, and I assume that almost all the women who work for Walmart are honest, would have her legitimate remedy diluted by the money that goes to your client who lied on her timesheets. And you have a duty to advocate for the woman that lied on her timesheets. Why doesn't that make her unrepresentative and damage the representativeness of the named members for the class? I think there's several reasons. First of all, the Defendant hasn't raised that argument before this Court. It has not made an unrepresentative argument. Now, I have to. Secondly of all, the plaintiffs heavily dispute Defendant's characterization. In fact, that plaintiff has a retaliation claim made about that kind of situation. Third, this class is only about equal pay and promotion. It has no claims for demotion, no claims for firing. So any remedy in this case will include no money for the class that involves those issues. That's not presented here. I thought people like her who were fired and also people who, like one or two of your other plaintiffs who had quit, would get remedies, both would get monetary remedies. Women who worked in this case who were denied equal pay would get a remedy, but for denial of equal pay. This case does not make any class claims for demotion or termination. And no money and damages is sought for that, for the class in this case. And in fact, the Defendant never made the argument even below that there was an inadequacy based on that issue. The only inadequacy argument they made below was a claim that there weren't sufficient management-level employees to represent management employees, and that issue was abandoned before this Court. It was not made whatsoever. I want to address the second or the third argument of the Defendant, that there's some kind of automatic due process right to an individual hearing in every case. There is no case that is ever held that a Defendant has a due process right to an individual hearing challenging every class member. And if there was such per se right, you would never have a class of more than a couple hundred people. What the Supreme Court has said in due process is you have to look at the facts in every case and engage in essentially a balancing process, look at the interest on both sides and look at what process would lead to the fairest result. That is, if the process that the judge below suggests would lead to a clearly erroneous result, that would perhaps violate due process. That's a fair result for a minute. Part of what you need to show is that the equitable and declaratory relief predominates over the damages relief. Yes. There are some cases that suggest that back pay, even though it's money, should be treated like equitable relief. I understand that. Besides the back pay, what equitable and declaratory relief exactly are you seeking? What we're seeking is injunctive relief to change the Defendant's behavior. And, in fact, what the ---- What injunction do you want? What do you want? Well, what we want is the adoption of the objective standards, of affirmative action by the Defendant, of job analysis for criteria established. What the plaintiff, what the Court found below, and it was undisputed, is that the plaintiffs sought ---- On objective standards, affirmative action, anything else? There's an awful lot more, Your Honor, but I don't have ---- Our complaint actually lays out, it's the first exhibit there, it lays out a whole laundry list of items. And what the Court found without ---- What would the objective standards be? I mean, how do you know which of your employees to promote if you're not subjective? Like, do they smile? Do people like it? Your Honor, I hope modern business has a better standard for deciding. Job analysis is a well-established method for determining. In fact, Walmart, like any other company, hopes to make good decisions. But I agree with better method. I mean, I would think you'd want a manager that gets along more than you'd want a manager with a master's degree. We're not saying subjectivity is always bad, but what we're saying is that having a system where there is oversight and having an evaluation of what's really necessary to do the job, as opposed to, take, for example, this relocation requirement, which clearly has had an effect on women. Walmart has never shown it needed this policy. In fact, today, after the Class Cert motion was filed, it claims to have abandoned it, but it had an adverse impact on women for years. But the Court found that the injunctive relief would lead to very significant long-term relief in this case, undisputed by the defendant. It also found that the plaintiffs had the motivation to go forward on injunctive relief, even in the absence of punitive damages. And those are also uncontested here. The defendant's argument here, which they made in their brief, is that the fact that punitive damages are sought automatically pushes you out of B-2, which is not anything that this Court has ever found. Molsky finds it's a process where you look at what's been sought. But I want to get back to this last point in my remaining time, which is the due process argument. Kennedy. Well, you're out of time, so you might want to wrap it up. So I stand up? Go ahead. I'll go for it. Okay. As long as you'll let me, Your Honor. What would be the most erroneous method of figuring out what's happening? What Walmart wants the right to do is to challenge each individual class member, not based on any contemporaneous records, not based on any policies. What it would like to do is have its manager stand up there and subjectively state, well, I like Chuck more than Mary. In fact, what we propose is the only contemporaneous evidence that's kept in any systematic way is the electronic evidence, which is very rich indeed, has a lot of information. We propose that using that method and letting each side make the arguments about what's an appropriate factor or whatnot is going to lead to the most just result. The judge picks the managers or the master picks the managers instead of Walmart picking it? Neither of them pick the managers. We're talking now about damage analysis. And what happens is if we don't get to this unless the jury has found that there is a company-wide pattern and practice of discrimination and that Walmart subjectifies Walmart picked this person as manager, but when I look at the data that I can see, Walmart should have picked that person for manager and it must have been sex discrimination that led to the error? No. The jury will have already ruled. If the jury finds at Stage 1 there's a pattern and practice of discrimination, at that point the doubt should be resolved against the wrongdoer. And what the jury will have necessarily found is that Walmart could not defend that pattern and there was no objective basis for doing it. At that point, the Court is under the duty to, in the most complete method possible, to eliminate the discrimination that exists. And what we're saying is Walmart's suggestion, which wouldn't happen because, of course, there's never going to be 1.6 million trials, is much less likely to lead to a just result. Relying on post hoc speculation is not ever going to be as accurate as looking at the only data that's there and doing the best you can. And that's exactly what the Court said was appropriate in this case at this stage of the proceedings. Thank you, Your Honor. Let me, thank you, Your Honor. Let me just address that last point about these hearings. It's absolutely clear that what Mr. Seligman is arguing would happen is directly contrary to the Teamsters' decision in Title VII. He's saying that if there is a finding of discrimination, it's all over. The statistics rule today, and Judge Kleinfeld, the judge ruled Walmart would not be I didn't discriminate. That violates due process. It violates Title VII. Rule 7, Section 706G2A and the Stotts decision from the Supreme Court make clear that a nonvictim of discrimination cannot collect back pay or punitive damages, but that's what would happen here. And the judge didn't say that, as Mr. Seligman now suggests, that Walmart would have some opportunity to come in and make a showing. What he said at the end of his argument is what the judge said. It would be all done through records. I haven't heard anything like this except it's a sanction that a litigant wouldn't be able to put on evidence to defend itself and that the plaintiffs and the court would pick the evidence that would be used to punish the defendant. That violates due process. It violates the State Farm decision. It's unconstitutional and improper. And Mr. Seligman simply misstated the procedure that he persuaded the district judge to accept. The other point I wanted to make briefly is back to this.  Certainly. I have a question that confuses me a bit, counsel. At the Stage 1, what argument does the present status of this classification order prevent your client from making? It would prevent us, Your Honor, from doing, in a normal case. If the plaintiffs put on some, yes. Yet normal case. Okay, in this case. A lot of arguments list them that your client wants to bring forward that, based on the current ruling by the district court, it could not make at Stage 1. Not in the future, but at Stage 1. At Stage 1, Your Honor, Walnut would be precluded from putting on a store manager or the store managers around the country. Would it be precluded from putting on an honest, complete, statistically backed-up survey that showed that there was a total absence of discrimination in terms of gender, company-wide? I think we would be allowed to put on a statistical showing, yes. Now, but in most cases, Your Honor, you would augment that with testimony from the people. Just as the plaintiffs put on anecdotal evidence and the plaintiffs to put on testimony, Walmart would be able to say, we're going to put the decision-makers on to tell you that they were not discriminating. It's Phase 1. The judge said, absolutely not. You can't put on these individual store evidence. And that's all a product of the class action. It's not a product of the substantive law. And that's one of the issues. Doesn't that get into the basis for the part of the declaration of your expert that was stricken? No, Your Honor. Because her declaration was. You seriously think that there are Walmart managers that would get on the stand and say, well, yeah, I probably did discriminate? No, they wouldn't. They would get on the stand and say. Not a single one of them would get on the stand and say it was an entirely nondiscriminatory decision on my part. Well, we would be entitled to put on a case, Your Honor, of witnesses that we could show would demonstrate that they acted fairly with respect to the employees. It's the ones that have been fired. And the plaintiffs would probably put on some evidence, too. But that's called a trial. That's due process. And look, the jury might believe some of our witnesses and might believe some of their witnesses. That's called a jury trial. But you can't in advance say the defendant's limited to some records. Isn't that inherent in class actions? No, Your Honor. In fact, the Rules Enabling Act, Amchem and Ortiz from the Supreme Court say that you cannot change the substantive law or the proof that a company or an individual could put on to defend themselves. That's what Judge Jenkins did. That's what the plaintiffs have asked for here. And it violates the Rules Enabling Act in due process. It's absolutely clear. And the last point I want to make, just going back to the store-by-store statistics, because with all due respect to Mr. Seligman, he has misstated the study. There were two store-by-store analyses. Our expert did a regression, and it's the one at 579 through 584 of the excerpts of record, that combined all the separate units, except for the grocery department, that combined the optical, all the specialty units, and she found that at 92 percent there was no statistical disparity. Mr. Seligman is perpetuating an error that his own expert made and later admitted he didn't – his expert did not realize that our expert had combined all those units into one. So this slicing-and-dicing argument is simply incorrect. And their expert admitted that he had made a mistake on pages 341 through 342 of the plaintiff's supplemental excerpts of record. The Court's been generous with the time. I just would like to wrap up by saying the Court's been generous with the time. I just would like to wrap up by saying the Court's been generous with the time.  Kennedy, you're not saying that the judge would preclude Wal-Mart from introducing statistical evidence. The judge – the judge has said we can introduce statistical evidence, but we couldn't. And you don't know. You may have, you know, certain representative people in the company, you know, managers, that you might go to the judge and say, well, we just have these five or six and we'd like to put them on. You don't know that the judge is going to say, no, you can't put them on. I don't know he would do that, Your Honor. I don't know that. I don't. But, Your Honor, there's 3,400 stores. They're making a sweeping claim here that 3,400 store managers, including many women who are members of this class, discriminated. That's a serious allegation, and in our system of justice, those people generally would have the right to get on the stand and say that's false. Now, the only reason they wouldn't be allowed to do that here is because the plaintiffs have swept in the entire nation of stores without proof that there was common discrimination throughout the system. So we would ask the Court to decertify the class, and both on the commonality and typicality issues, the Teamsters issue, and the V2 issues, and also the punitive damage issues. Walmart has a right to a jury trial to every issue that relates to the punitive damage issue, including back pay, since that would form the compensatory predicate for punitive damages. Thank you very much. Thank you very much. The matter was well argued by both sides. We appreciate the argument. And the Court will recess until 9 a.m. tomorrow morning. Thank you. All rise. The Court for this session stands adjourned. The Court is adjourned.
judges: Pregerson, Kleinfeld, Hawkins